OPINION OF THE COURT
Michael D. Stallman, J.
May the former owner of a business, the sublessor of the *217 premises, maintain a summary proceeding against a buyersublessee based on nonpayment of rent, where the sublease deems the buyer’s default on promissory notes a default under the sublease? Is such a document a sublease, or a mortgage requiring a foreclosure action?
FACTS
Petitioner entered into possession of the subject premises pursuant to a lease dated May 1, 1991 with the landlord, 27-29 Thames Associates, the overlandlord. Petitioner owned and operated a pizzeria there. On May 6,1993, petitioner contracted to sell the pizzeria business and sublet the premises to respondent, who paid a cash down payment and agreed to pay the balance in promissory notes pursuant to the terms of the contract of sale. The parties closed the transaction on June 16, 1993. At that time, they entered into several agreements relating to the sale of the business, and the use of the premises where the pizzeria was located, including the sublease here at issue. The parties also executed a security agreement wherein petitioner retained the right to repossess the chattels in the pizzeria in the event respondent defaulted in making payment on the promissory notes.
The sublease between petitioner and respondent commenced on June 16, 1993 and ends on August 16, 2002, and provided for payment of rent and additional rent as set forth in two schedules. The overlease between petitioner and the overland-lord remains in effect until July 31, 2003. The sublease provides in pertinent part:
"(i) A default in the payment of promissory notes described in said security agreement shall be deemed a substantial default in the performance of the terms, covenants and provisions hereof.
"(ii) Anything herein to the contrary notwithstanding, this sublease shall end upon tenant, its successors or assigns, having made full payment of the entire series of promissory notes described in the aforesaid security agreement made simultaneously herewith, together with interest thereon.”
It is undisputed that in November 1994, respondent defaulted on the promissory notes used to purchase the pizzeria and has made no further payments. It is also undisputed that respondent has not paid rent since January 1995.
*218 Respondent makes this preanswer motion to dismiss* this commercial nonpayment petition on the grounds that (1) there is a prior action pending; (2) the petition fails to state a cause of action. In the alternative, the motion seeks summary judgment dismissing the petition based on documentary evidence and monetary sanctions against petitioner.
I
Respondent contends that this proceeding should be dismissed because there is a prior action pending. Petitioner seller commenced an action in Supreme Court, New York County, seeking summary judgment in lieu of complaint based on the respondent buyer’s default on promissory notes. Respondent commenced a separate Supreme Court action against petitioner claiming that petitioner breached a restrictive covenant, and asserting that the contract of sale lacked consideration.
In order to warrant dismissal of the proceeding pursuant to CPLR 3211 (a) (4), movant must demonstrate that another action between the same parties on the same cause of action is pending in another court. In this proceeding, petitioner seeks a money judgment for unpaid rent and a judgment of possession. Although all three actions are related to the underlying sale of a pizza business, neither the cause of action alleged in this nonpayment proceeding, nor the relief requested is the same as those set forth in either Supreme Court action. Accordingly, respondent’s motion to dismiss this proceeding on this ground is denied.
II
Respondent’s other two grounds for dismissal, that the petition fails to state a cause of action because petitioner has no standing to commence this summary proceeding, and that documentary evidence establishes that petitioner has no standing, will be treated jointly as both grounds require the court to determine whether a valid sublease exists between the parties.
In his moving affirmation, respondent’s counsel argues that there is no landlord-tenant relationship between the parties *219 and thus petitioner lacks standing to commence this summary proceeding on the ground that petitioner is not a "tenant of the subject premises” since petitioner "sold” its interest to respondent. In his reply affirmation, respondent’s counsel argues that the documentary evidence submitted demonstrates that "there is no landlord-tenant relationship between the parties, but rather a secured transaction.” Finally, in his supplemental affirmation, respondent’s counsel argues that the sublease has all the key attributes of a mortgage.
In support of its first contention, that petitioner retains no interest in the premises, respondent argues that petitioner assigned its interest in the lease to respondent. Respondent cites the sublease rider provision that authorizes respondent to pay rent directly to the overlandlord.
If there were no other provision to the contrary in the sublease, and if the parties acted as if petitioner retained no interest in the premises, the provision authorizing direct payment to the overlandlord could be viewed as evidence of a consummated, effective assignment, irrespective of how the document is titled. That is not the case here. Every other provision and the parties’ actions make clear that they intended a sublease. There is no ambiguity as to the parties’ intention. It is clear from a reading of all contract documents, including the closing provision of the contract of sale, the escrow agreement, the security agreement, the sublease and the specific provision of the contract itself dealing with the effective date of assignment, that the parties, who were both represented by counsel, intended an assignment to take effect only in the future, conditioned upon full payment of the purchase price. In the interim, during payment, petitioner clearly retained an interest in the premises. Under these circumstances, the agreement between petitioner and respondent that respondent pay rent directly to overlandlord should be regarded as no more than a bargained-for convenience to petitioner, where the buyer-subtenant in possession would make direct payment effectively as the seller-sublessor’s agent.
There is no basis in law or logic for respondent’s argument that such a noncoterminous sublease is improper. A sublease need not be coterminous with an overlease, provided that the sublease term may not extend beyond the end of overlease: a tenant is powerless to convey an estate which it does not possess, because the tenant’s interest ends at the end of the overlease. Accordingly, in order to assure that the overtenant will be able to surrender possession to the overlandlord at the *220 end of the overlease, subleases are crafted to end prior to the expiration of the overtenant’s term. Not only is such an arrangement permissible, it is legally and commercially prudent.
It was clearly the parties’ intention that petitioner would sublet the premises to respondent and that the assignment would not become effective until the last installment of the purchase price was paid. Accordingly, respondent’s argument that petitioner did not retain an interest in the premises as sublessor and lacks standing to commence this proceeding is without merit.
Ill
Respondent also argues that the sublease is in reality evidence of a secured transaction or a mortgage. A mortgage is defined as any conveyance of land intended by the parties, at the time of its making, to be security for the payment of money or the doing of some prescribed act. (77 NY Jur 2d, Mortgages, § 1.) Enforcement of the rights set forth in a mortgage must be the subject of a foreclosure proceeding; such relief cannot be obtained via summary proceedings in Civil Court.
The fact that a sublease provides additional security does not make it a mortgage; neither does it mean that no landlord-tenant relationship exists between the parties. A lease or sublease may contain provisions intended to protect the petitioner in the event of respondent’s default on rent, or on another obligation (e.g., payment of the balance of the purchase price). Just because the parties agreed to provide the seller with additional security, by linking the various obligations, does not alter the essential nature of the underlying lease or sublease. It therefore does not affect petitioner’s standing to commence a summary proceeding based on such a sublease, or equally significantly, the overlandlord’s standing to commence a summary proceeding against this petitioner.
Examination of the sublease reveals that it is a genuine sublease, and not merely a security agreement. Petitioner retained an interest in the subject premises because the sublease expires prior to the overlease. Petitioner was still entitled to collect rent from respondent. The provision for direct payment of rent to the overlandlord was merely a convenience agreed to by the parties. (See, supra.) More importantly, the sublease arrangement means that the petitioner here remained in privity with the overlandlord, continued to be liable for rent to the overlandlord, and otherwise remained responsible for the performance of all terms and conditions of the overlease.
*221 This transaction remained intimately related with and subject to the terms of the over lease. A summary proceeding should not be used as an expedient substitute for the foreclosure of a mortgage, simply because the mortgage was written as a lease. However, a sublessor, in fact as well as form, should not be denied the remedy of a summary proceeding simply because the sublease provides additional protection to the sublessor in the event of the sublessee’s default. Petitioner not only remains liable under the overlease in theory, here, the overlandlord’s receiver has already instituted a nonpayment summary proceeding against petitioner, further evidencing that the sublease is not merely a security agreement, but an instrument for creating a sublandlord-subtenant relationship between the parties.
In support of its argument that the sublease is really a mortgage, respondent cites only one case, Cagliostro v Galgano (69 Misc 321). In that case, the respondent owed petitioner money on a preexisting obligation. In order to secure the preexisting debt, the parties entered into a complicated series of transactions which, inter alia, created a "lease” on premises that Galgano had leased from a third-party landlord. Cagliostro was named "lessor” to Galgano as "lessee.” The landlord was not involved, and this "lease” did not affect the existing lease between Galgano and the landlord. This agreement was exclusively a security agreement that did not convey possession of the premises. Given the intent and actions of the parties, the court held that the "lease” was not a lease, but merely a pledge of an interest in real property as security for the payment of a debt. (Cagliostro v Galgano, supra, at 324.)
In contrast, here, petitioner simultaneously sold a business and personal property, and subleased the premises to respondent with the clear understanding that the premises would be used for the continuation of the pizza business by the new owner.
Further indicative of the sublease’s character as a valid sublease in its own right is the fact that while petitioner asserts that over $300,000 is still due and owing on the promissory notes, petitioner predicates this summary proceeding on nonpayment of a much smaller sum, viz., $57,000, due as rent and additional rent under the sublease.
Whether a lease is intended as a present conveyance of an interest in real property, or only as a device to create a security interest, depends on the facts of each case. (See, DiFigola v Horatio Arms, 189 AD2d 724.) The parties to the pizzeria sale *222 made a business decision that if respondent defaulted on the notes, in addition to having the various remedies in contract regarding the notes, the seller should also have the right to reoccupy the premises either for reuse or rerental. The separate assets (the business, the equipment, the lease) give rise to separate rights and separate remedies. Neither law nor logic require a court to undo an unambiguous arrangement made by parties to an arms-length business transaction represented by counsel. To hold otherwise would vitiate the clear intent of the parties. It would also place petitioner in an untenable position. While remaining liable to its overlandlord for performance of the lease, and subject to a summary proceeding, petitioner would have no equivalent recourse against its subtenant; yet petitioner would remain liable to its overlandlord for respondent’s acts.
CONCLUSION
Accordingly, respondent’s motion for summary judgment dismissing the proceeding is denied.
Respondent’s motion for sanctions is denied; it has not demonstrated that petitioner committed any frivolous conduct under 22 NYCRR 130-1.1.

 The papers in support of this motion were denominated "affirmation in support of motion under CPLR 3211.” By letter dated January 30, 1996, the court informed the parties that it would treat the respondent’s motion as a motion for summary judgment pursuant to CPLR 3211 (c) and allowed the parties to submit additional evidence on or before February 23, 1996. Each side submitted supplemental affirmations which were referred to the court on February 26, 1996.